**Leonard GAUTHIER, Plaintiff,**

v.

**CROSBY MARINE SERVICE, INC., and American Home Assurance Company, Defendants.**

Civ. A. No. 82–5028.

United States District Court, E.D. Louisiana.

June 29, 1984.

Paul M. Lavelle, A. Gordon Grant, Jr., Eldon E. Fallon, New Orleans, La., for plaintiff.

Michael L. McAlpine, John B. Peuler, New Orleans, La., for defendants.

CASSIBRY, Senior District Judge:

This matter was heard by the Court sitting without a jury on plaintiff's Leonard Gauthier's claim that the defendants, Crosby Marine Service, Inc., and American Home Assurance Company, are liable for punitive damages for arbitrarily and capriciously failing to pay maintenance and cure. After carefully considering the pleadings, the evidence, and the arguments of the parties, the Court finds for the defendants, and enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1.

Plaintiff, Leonard Gauthier, is a resident of Louisiana domiciled in Harvey, Louisiana.

2.

At all times pertinent, defendant Crosby Marine Service, Inc., was a corporation organized and existing under the laws of the State of Louisiana doing business within the Eastern District of Louisiana. Defendant American Home Assurance Company is a foreign corporation authorized to do business in Louisiana and is the liability insurer of Crosby for the claim asserted in this litigation.

3.

This litigation arises from a related case, Gauthier v. Crosby Marine Service, Inc., et al, Civil Action No. 79–2366. Therein, Leonard Gauthier made a claim for damages arising from personal injuries alleged-ly sustained on July 3, 1978 while serving as captain of the M/V RICKY III. Gauthier filed his original Complaint on July 2, 1979 wherein it was alleged that Crosby Marine Service had been negligent under the Jones Act and that its vessel was unseaworthy. In addition to suing his employer, Gauthier sued several other defendants on a variety of grounds. On May 2, 1980, almost a year after the filing of the original Complaint, the plaintiff amended the Complaint to state a claim for maintenance and cure under the General Maritime Law. In the Amended Complaint, the plaintiff also sought punitive damages on the grounds that Crosby Marine Service had arbitrarily and capriciously failed to provide him with maintenance and cure. Crosby Marine Service brought a third-party action against L. Griffin, Inc. tendering it to plaintiff as a direct defendant under Rule 14(c) and seeking indemnity and contribution for its maintenance and cure expenditures.

4.

At the request of plaintiff's counsel and over the objection of counsel for Crosby Marine, the maintenance and cure was severed from the other claims and tried to the Court without a jury on June 2, 1980. In a written opinion dated September 17, 1980, this Court found Crosby Marine Service, Inc. and L. Griffin, Inc. each liable for some portion of plaintiff's maintenance and cure claims and delineated the obligations of each. This Court decided the arbitrary and capricious issue adversely to the plaintiff.

5.

In this Court's opinion of September 17, 1980, the clerk was directed to prepare a judgment consistent with that opinion. However, shortly after the opinion was rendered, this Court's clerk requested the assistance of counsel in preparing a judgment. On October 9, 1980 counsel concerned with the maintenance and cure aspect of the case met to discuss preparation of a judgment. Agreement was not reached at that meeting. On several subsequent occasions, counsel conferred and

corresponded concerning preparation of the judgment.

6.

On February 4, 1981, plaintiff's counsel forwarded a proposed judgment to counsel for Crosby Marine for execution. This judgment contained a clause certifying that it was a final judgment in accordance with Rule 54(b) of the Federal Rules of Civil Procedure. After making a change in the proposed judgment which is immaterial to the case at hand, counsel for Crosby Marine executed the judgment and transmitted it to counsel for L. Griffin, Inc. for execution as per the request of plaintiff's counsel.

7.

On April 2, 1981, counsel for L. Griffin, Inc. advised other counsel that he was not agreeable to submission of the proposed judgment because it contained a Rule 54(b) certification clause. L. Griffin, Inc. objected to the Rule 54(b) certification on the grounds that it did not wish to take an appeal at that time. Counsel for L. Griffin, Inc. suggested that both Griffin and Crosby pay the plaintiff without the entry of a Rule 54(b) judgment. However, Griffin was unwilling to pay Crosby Marine on its successful claim over against Griffin. Of course, counsel for plaintiff was agreeable to voluntary satisfaction of the Court's decision concerning payment of the plaintiff. However, Crosby Marine was willing to voluntarily satisfy the Court's decision only if the decision was satisfied *in toto*. L. Griffin, Inc. was unwilling to proceed in this fashion.

8.

When plaintiff's counsel failed to submit the judgment containing the Rule 54(b) certification, counsel for Crosby Marine offered to submit it to the Court. However, plaintiff's counsel advised counsel for Crosby Marine that he would object to submission of the judgment. In his letter of November 23, 1981 concerning submission of the judgment, counsel for plaintiff stated:

"As I recall it, we had several telephone discussions last spring and last summer regarding the question of the entry of a judgment. Since you indicated that your client had no intention of making any further maintenance and cure payments to my client on a voluntarily basis, and since I did not want to have the trial of the remaining issues delayed by an interlocutory appeal, insofar as I am concerned there is no purpose to be served by submitting a judgment to the court at this time. The case is scheduled for trial on the remaining issues in February, 1982 and the elements that have already been resolved by Judge Cassibry's decision on maintenance and cure will therefore be incorporated *into the final (and executable) judgment* which will be entered following trial of the remaining issues." (Emphasis added).

9.

Plaintiff's counsel's letter of November 23, 1981 reveals that at that time he considered that the maintenance and cure decision was unenforceable until a Rule 54(b) judgment had been entered or the entire case was resolved.

10.

On November 9, 1981, more than a year after this Court's decision of September 17, 1980, plaintiff moved for leave to file a Second Supplemental and Amending Complaint. *Inter alia,* plaintiff sought to amend his Complaint to assert a second claim for punitive damages for arbitrary and capricious failure to pay maintenance and cure benefits. The defendants opposed the plaintiff's motion to amend his complaint to assert another claim for arbitrary and capricious failure to pay maintenance and cure since that issue had already been tried and decided. The plaintiff's request for leave to amend his complaint to assert another claim for arbitrary and capricious failure to pay maintenance and cure was denied by the Magistrate who considered the plaintiff's motion. The Magistrate's Minute Entry concerning that motion stated:

"PROPOSED SEVENTH CAUSE OF ACTION AS REGARDS PUNITIVE

DAMAGES FOR FAILURE TO TIMELY PAY MAINTENANCE AND CURE BENEFITS DISALLOWED SINCE COURT PREVIOUSLY RULED THEREON."

The plaintiff filed a motion to review the Magistrate's ruling. The plaintiff alleged that the seventh cause of action of its Second Supplemental and Amended Complaint was separate and distinct from the arbitrary and capricious failure to pay maintenance and cure claim that had previously been tried and decided. The plaintiff's specification of error concerning the Magistrate's ruling states as follows:

"The claim that plaintiff seeks to assert for punitive damages is based upon the arbitrary and unreasonable refusal of defendant, Crosby (and its insurer), to pay supplemental maintenance benefits due plaintiff *subsequent to the Court's September 18, 1980 decision.*" (Emphasis in the original.)

Subsequently, on December 17, 1981, the Magistrate rescinded his earlier Order and entered a new Order permitting plaintiff to amend his Complaint as requested. Crosby Marine Service appealed the Magistrate's Order of December 17, 1981 on the grounds that the plaintiff could not expect payment until a final, appealable and executable judgment was entered. The plaintiff opposed defendants' Motion for Review. In an Order entered January 21, 1982 this Court granted Crosby Marine's request that plaintiff not be allowed to seek punitive damages on the maintenance and cure claim a second time. At this time the Court also directed plaintiff's counsel to submit a judgment. The judgment was signed by this Court on January 21, 1982. The judgment was not certified as a final judgment under Rule 54(b).

### 11.

On February 2, 4 and 5, 1982 the tort claims were tried to a jury. The jury rendered a verdict finding that Crosby Marine Service, Inc. had not been negligent and that the M/V RICKY III was not unseaworthy. The jury further determined that both the plaintiff and Dixie Oil Tools, one of the several defendants sued in addition to the plaintiff's employer, were each 50% negligent. Following the jury's verdict, the Court took under consideration claims by Crosby Marine and L. Griffin, Inc. that they were entitled to indemnity for their maintenance and cure expenditures from Dixie Oil Tools. A judgment was not rendered on the jury's verdict at that time since the indemnity issue had been taken under advisement.

### 12.

Subsequent to the jury trial, the plaintiff filed a Motion to Alter or Amend the January 21, 1982 judgment relating to maintenance and cure. For written reasons assigned on March 16, 1982, this Court granted plaintiff's motion and ordered plaintiff's counsel to draft and submit a revised judgment. The revised judgment was signed on April 6, 1982 and was entered on April 9, 1982. The amended judgment, like the original judgment, was not certified as a final judgment under Rule 54(b).

### 13.

On July 13, 1982, more than 90 days after the entry of the revised judgment, plaintiff filed a Motion to Examine Judgment Debtor on the basis that Crosby Marine had not satisfied the April 6, 1982 judgment. The plaintiff now considered that the judgment was enforceable without a Rule 54(b) certification. The filing of the Motion to Examine Judgment Debtor was counsel for Crosby Marine's first notification that plaintiff expected payment in accordance with the April 6, 1982 judgment although it did not contain a Rule 54(b) certification.

### 14.

The hearing on the Judgment Debtor Examination was scheduled for hearing on July 28, 1982 before Magistrate Ingard Johannesen. Crosby Marine filed a Motion to Quash the Judgment Debtor Examination on the grounds that the judgment was not final and susceptible of enforcement. Magistrate Johannesen heard oral arguments on defendants' Motion to Quash the Judgment Debtor Examination on July 28, 1982.

At the conclusion of the hearing, the Magistrate advised the parties that the enforceability *vel non* of the judgment should be decided by this Court. Subsequently, Crosby Marine's Motion to Quash was heard and denied by this Court on October 1, 1982 without reasons.

15.

On October 29, 1982 Crosby Marine filed a Petition for Writ of Mandamus and/or Prohibition with the United States Court of Appeals for the Fifth Circuit seeking an order prohibiting enforcement of the judgment. The Fifth Circuit denied Crosby Marine's Writ on November 2, 1982 without reasons.

16.

On November 4, 1982, counsel for Crosby Marine Service promptly contacted plaintiff's counsel to arrange for satisfaction of the judgment. On that date as well as November 9, 1982 counsel for Crosby Marine discussed with counsel for plaintiff that a portion of the judgment held Crosby Marine and L. Griffin, Inc. jointly and solidarily liable. Counsel for Crosby Marine requested that plaintiff's counsel advise whether he intended to seek satisfaction of that portion of the judgment from both Crosby and Griffin. As of November 9, 1982 plaintiff's counsel had yet to make a decision concerning what course of action to pursue. Consequently, Crosby Marine issued a draft to plaintiff on November 11, 1982 for $11,312.44 which represented satisfaction of the portion of the judgment rendered solely against Crosby Marine as well as Crosby Marine's virile share of that portion of the judgment which was rendered jointly and solidarily against Crosby Marine and L. Griffin, Inc. On November 11, 1982 counsel for plaintiff advised counsel for Crosby Marine that the plaintiff intended to enforce the judgment only against Crosby Marine and that the plaintiff expected payment of the remainder of the judgment by November 18, 1982. Defendants issued another draft to plaintiff for the remaining portion of the judgment on November 18, 1982.

17.

On November 4, 1982 plaintiff filed the instant action seeking compensatory damages of $500,000.00 and punitive damages of $750,000.00 plus cost and attorney's fees on the grounds that the defendants were arbitrary and capricious for not satisfying the Court's judgment of April 6, 1982. The defendants filed a Counterclaim seeking cost and attorney's fees on the grounds that the plaintiff's suit is baseless and was brought solely for purposes of harassment.

18.

On April 8, 1983 this Court rendered its decision concerning the indemnity claims of Crosby Marine and L. Griffin, Inc. against Dixie Oil Tools. Subsequently, on May 23, 1983 a judgment was entered in conformity with this decision as well as the jury's verdict of February 5, 1982. This judgment disposed of the entire case; there were no outstanding claims left for resolution. The plaintiff has filed an appeal of the jury's verdict. Both Crosby Marine and L. Griffin, Inc. have appealed the maintenance and cure judgment as well as the Court's decision concerning indemnity.

## CONCLUSIONS OF LAW

1.

This claim is within the admiralty jurisdiction of this Court. 28 U.S.C. § 1333.

2.

██ Only a final judgment can be enforced. Wright, Miller & Kane, Federal Practice and Procedure, Civ.2d § 2661; 6 J. Moore, Federal Practice 54.42; *Redding & Company v. Russwine Constr. Corp.*, 417 F.2d 721 (D.C.Cir.1969). A judgment is final only when it disposes of the entire controversy, leaving nothing for the Court to do in the case. *Anastasiadis v. S.S. LITTLE JOHN*, 339 F.2d 538 (5th Cir.1964).

3.

██ In cases involving multiple claims and/or parties, FRCP 54(b) specifically provides that the Court may enter a final judgment if the Court makes "an express determination that there is no just reason

for delay" and makes "an express direction for the entry of judgment." A judgment entered in a multiple party and/or multiple claims case prior to the disposition of the entire case is not enforceable unless the requirements of Rule 54(b) are followed. Wright, Miller & Kane, Federal Practice & Procedure, Civ.2d, § 2661; 6 J. Moore, Federal Practice 54.52; *Redding & Company v. Russwine Constr. Corp., supra.* In this regard, Wright, Miller & Kane states as follows:

> "Other matters that should be noted in relation to the entry of a judgment under rule 54(b) are that it enables a lien to be imposed on a judgment debtor's property and a writ of execution to be issued to begin the process of collecting any damage award."

The Fifth Circuit Court of Appeals has consistently required that the district courts comply with the requirements of Rule 54(b) when a claim is made that a final judgment has been entered in a multi-party/multi-claim case prior to disposition of the entire case. *See e.g. Martin v. Campbell,* 692 F.2d 112 (11th Cir.1982); *Smith v. Mine Safety Appliances Company,* 691 F.2d 724 (5th Cir.1982); *In re Emerald Oil Co.* 694 F.2d 88 (5th Cir.1982).

4.

■ The April 6, 1982 judgment which the plaintiff sought to enforce was never certified as a final judgment under Rule 54(b). The Court is convinced that at the time of the preparation of the judgment all of the parties in the maintenance and cure claim, the plaintiff, defendants Crosby Marine, American Home Assurance Company and L. Griffin, considered that the judgment would dispose of one claim in a multi-claim suit and would require Rule 54(b) certification to become a final judgment. Apparently none of them considered the view, ultimately held by the Court, that a judgment on a severed claim for maintenance and cure is final in the same way that a judgment is final on a maintenance and cure claim which is brought separately from any Jones Act or other maritime claim. Moreover, the defendants Crosby Marine and American Home Assurance Company have consistently maintained that the plaintiff could not expect payment in accordance with the Court's September 1980 maintenance and cure decision until a Rule 54(b) judgment was entered or the entire case resolved. This position, even if in error as considered by the Court, was not so unreasonable as to be considered frivolous and wholly untenable. The Court is further convinced that defendant Crosby Marine continued in good faith to have that opinion at the time this Court denied its motion to quash the plaintiff's judgment debtor rule.

5.

Counsel for Crosby Marine promptly contacted plaintiff's counsel to arrange for satisfaction of the judgment after the Fifth Circuit denied Crosby Marine's writ seeking an order prohibiting enforcement of the judgment. Under these circumstances the defendants' failure to pay maintenance and cure was not arbitrary and capricious, and more particularly, their failure to satisfy the Court's judgment of April 6, 1982 until November 1982 was not arbitrary and capricious. Likewise their failure to acquiesce in the plaintiff's requests to voluntarily satisfy the judgment cannot be viewed in any different light under all the circumstances here. The law provided plaintiff a remedy for enforcement of his judgment and he finally commenced utilization of that right.

6.

■ The assessment of attorney's fees against the plaintiff, as contended for by defendants in counterclaim, under the Court's inherent power to assess attorney's fees as costs when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons", is not appropriate here. The Court is not convinced, as defendants contend, that the plaintiff's counsel acted in bad faith in initiating and prosecuting this litigation.

The Clerk shall prepare judgment dismissing the complaint of plaintiff and the counterclaim of defendant.